# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

**CURTIS EDWARD SWIFT,**            }
                                    }
    **Plaintiff,**            }
                                    }
v.                                  }   **Case No.: 2:11-CV-03137-RDP**
                                    }
**MICHAEL J. ASTRUE,**              }
**COMMISSIONER OF SOCIAL**          }
**SECURITY,**                       }
                                    }
    **Defendant.**            }

## MEMORANDUM OF DECISION

Plaintiff Curtis Edward Swift brings this action pursuant to Section 1631(c) of the Social Security Act (the "Act"), 42 U.S.C. § 1383(c), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"). Upon careful review, the court finds that the ALJ's decision is due to be affirmed.

### I. Proceedings Below

Plaintiff filed his application for SSI on April 27, 2009, alleging a disability onset date of March 17, 2009. (R. 48, 107). Plaintiff claimed that he could not work because of a back injury resulting from a motor vehicle accident. (R. 110-11). Plaintiff's application was denied initially on August 31, 2009 (R. 49), and on September 30, 2009, he requested a hearing before an administrative law judge ("ALJ"). (R. 59). Plaintiff's request was granted and a video hearing was held on December 15, 2010 in Birmingham, Alabama. (R. 27-47, 62). The ALJ ultimately determined that Plaintiff had not been disabled within the meaning of the Act through February 15, 2011, the date of her decision. (R. 16-23). On March 1, 2011, Plaintiff appealed the ALJ's decision to the Social Security Administration Appeals Council (the "Appeals Council"). (R. 11). The

Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1), and that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. 42 U.S.C. § 1383(c).

At the time of the hearing, Plaintiff was 42-years old and had a twelfth-grade education. (R. 31, 115). Plaintiff testified that after high school he joined the Navy[1] and completed schoolwork in retail sales. (R. 31-32). Plaintiff had past work history as an automobile detailer and janitor. (R. 33-34, 111).

Plaintiff was involved in a motor vehicle accident on March 17, 2009. (R. 160). Plaintiff was seen at the University of Alabama at Birmingham Hospital ("UAB"). (*Id.*). The attending radiologist at UAB reported that Plaintiff's X-rays indicated normal cervical spine alignment and no evidence of fracture or subluxation, except for minimal loss of height on the front side of three vertebrae in Plaintiff's lower back, which possibly indicated Scheuermann's disease (*i.e.*, curving of the spine that causes a bowing or rounding of the back). (R. 158-59, 183-84). Plaintiff's treating physician at UAB found only minimal cervical spine and lumbar spine tenderness, no thoracic spine (*i.e.*, vertebrae in the middle of the back) tenderness, and no evidence of trauma. (R. 160). Plaintiff was diagnosed with cervical strain, lumbar strain, and single episode of hypertension. (R. 161). Plaintiff was discharged with anti-inflammatories, muscle relaxers, and a cervical and lumbar spine strain instruction sheet. (R. 160).

On April 18, 2009 and May 14, 2009, Plaintiff presented at the MedplexMD Medical Clinic ("MedplexMD") with complaints of back pain. (R. 179). Plaintiff was prescribed a back brace and

---

[1] During the hearing, when questioned by the ALJ if he "ha[d] an honorable discharge," Plaintiff responded, "no, ma'am." When asked if it was "a dishonorable or honorable discharge from the Navy," Plaintiff responded, "[a]ll of them." (R. 31).

acetaminophen with codeine, as well as Loritab. (R. 179-81). Plaintiff was instructed to return in ten days. (Tr. 179). Plaintiff missed his follow-up appointments with MedplexMD and did not refill his prescriptions. (R. 188).

On August 22, 2009, Plaintiff received a consultative examination from Dr. David Brower. (R. 202). During this examination, Plaintiff indicated to Dr. Brower that he was fully independent for his daily activities and housework, and that he was able to enjoy walks through the park. (*Id.*). Dr. Brower observed that Plaintiff was able to move about, get on and off the exam table, and take his shoes on and off without difficulty. (R. 203). Plaintiff was able to bend forward at the waist at a ninety-degree angle, and he was able to bend at the waist both sideways and backwards at a twenty-five-degree angle. (R. 204). Dr. Brower found that Plaintiff had spasms in the left lower back and diagnosed lumbrosacral radiculopathy (nerve irritation caused by damage to the disc in between vertebrae). (R. 204-05).

At his hearing, Plaintiff testified that on a scale of one to ten, with one being the least and ten being the greatest amount of pain possible, his pain is around nine on an average day. (R. 42). Plaintiff stated that he has lower back pain that shoots down through his leg and causes him to lose bowel control. (R. 36).

Following his hearing, Plaintiff received a second consultative examination with Dr. Jack Zaremba. (R. 207). Dr. Zaremba found Plaintiff had (1) some tenderness and spasms when pressure was applied to his back, and (2) a limited range of motion because of his back pain. (R. 208). This led Dr. Zaremba to diagnose Plaintiff with degenerative disc disease of the lower back, possible Scheuermann's disease, lumbar radiculopathy with parathesias, weakness of the lower left leg, cervical strain, hypertension, and left shoulder trapezial pain. (R. 208-09). Dr. Zaremba determined

that Plaintiff experienced pain to such a degree that it would distract him from adequate performance of daily activities or work. (R. 211).

## II.  ALJ Decision

Determination of disability under the Act requires a five step analysis. *See* 20 C.F.R. § 404.1520(a). First, the ALJ must determine whether the claimant is engaged in any substantial gainful activity, *i.e.*, activity done for pay or profit which involves significant mental or physical activity. *See* 20 C.F.R. § 404.1520(b).  Second, if the claimant is not engaged in any such activity, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that is "severe," *i.e.*, an impairment which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). Third, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings"). *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.

Before proceeding to steps four and five, the ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e).  The ALJ determines the claimant's RFC based on all the relevant medical and other evidence in the case record. 20 C.F.R. § 404.1545.  In the Eleventh Circuit, if the claimant alleges disabling pain, the ALJ must evaluate the claimant's subjective pain testimony using the standard articulated in *Hand v. Heckler*, 761 F.2d 1545 (11th Cir. 1985), and its progeny.

Once the ALJ has determined the claimant's RFC, the ALJ moves on to the fourth step of the analysis, where a determination is made about whether the claimant is capable of performing past relevant work. 20 C.F.R. § 404.1520(f). If the claimant is determined to be capable of performing past relevant work, the claimant is deemed not to be disabled. However, if the ALJ finds the claimant unable to perform past relevant work, the analysis proceeds to the fifth and final step in which the ALJ must determine whether the claimant is able to perform any other work. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. *Id.*

To determine the number of jobs that a claimant can perform, the ALJ may apply the Medical Vocational Guidelines (the "grids"), found in 20 C.F.R. § 404, Subpart P, Appendix 2, or consult a vocational expert ("VE") by "posing hypothetical questions to the VE to establish whether someone with the claimant's impairments would be able to find employment." *Watson v. Astrue*, 376 F. App'x. 953 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004)).

In this case, the ALJ concluded that Plaintiff was not under a disability at any time relevant to her decision. (R. 23). The ALJ found that: Plaintiff had not engaged in any substantial gainful activity since his alleged onset date of April 27, 2009; his degenerative changes of the lumbar spine constituted a severe impairment; however, his impairment did not meet or medically equal one of the listed impairments in the Listings (R. 18-20). The ALJ specifically noted that Plaintiff's impairments were not attended by any of the criteria described in the revised Musculoskeletal Listings in Section 1.00 of the Listings. (R. 20).

In determining Plaintiff's RFC, the ALJ found that Plaintiff's impairment could reasonably be expected to cause some of his alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible because they were inconsistent with the objective medical evidence. (R. 20-21). The ALJ further found that although Plaintiff was unable to return to his past relevant work, there were a significant number of jobs in the national economy that Plaintiff could perform, given his age, education, work experience, and RFC. (R. 21-22). Accordingly, the ALJ concluded that Plaintiff retained the RFC to perform light work that does not require any climbing of ladders, ropes or scaffolds; more than occasional stooping, kneeling, crouching, crawling, or climbing of stairs or ramps; and no concentrated exposure to workplace hazards. (*Id.*).

### III.  Plaintiff's Argument

Plaintiff advances two arguments for remand or reversal: (1) the ALJ should have credited his subjective pain testimony and found him disabled because of his pain (Pl.'s Mem. 8-9); and (2) the ALJ arbitrarily substituted her own judgment for that of Dr. Zaremba. (Pl.'s Mem. 10).

### IV.  Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  While less than a preponderance, substantial

evidence is also "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore*, 405 F.3d at 1211.

## V. Discussion

For the reasons stated below, the court concludes that the ALJ's decision is supported by substantial evidence and that the ALJ correctly applied the law in reaching her decision. Regarding Plaintiff's specific allegations, the court determines that there is substantial evidence to support the ALJ's determination that Plaintiff's condition could not reasonably be expected to cause his alleged pain, and the ALJ did not arbitrarily substitute her own judgment for that of Dr. Zaremba.

### A.     Substantial Evidence Supports the ALJ's Application of the Pain Standard.

Plaintiff contends that the ALJ should have credited his subjective pain testimony and found him disabled because of his pain. (Pl.'s Mem. 8-9). In his hearing before the ALJ, Plaintiff testified that lower back pain and shooting pain through his leg causes him to lose bowel control, and during the day his pain, on a scale of one to ten, is around nine. (R. 36, 42). Plaintiff's argument seems to indicate that he believes the court's review of the ALJ's decision on this issue is *de novo*; it is not. The court's review is limited to whether the ALJ correctly applied the Eleventh Circuit's standard when evaluating Plaintiff's subjective pain complaints and whether the ALJ's determination is supported by substantial evidence. The court finds that the ALJ applied the correct legal standard

and there is substantial evidence to support the ALJ's decision to discredit Plaintiff's subjective pain testimony.

The rule in the Eleventh Circuit is well-established: a claimant seeking to show disabling pain must present (1) evidence of an underlying medical condition, and (2) either objective medical evidence that confirms the severity of the alleged pain arising from that condition, or that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Hand v. Heckler*, 761 F.2d at 1548 (quoting S.Rep. No. 466 at 24); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the ALJ finds that a claimant meets this threshold requirement, the ALJ may still discredit a claimant's subjective allegations of disabling pain, but the ALJ "must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations." *Dyer v Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991), *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Holt*, 921 F.2d at 1223; *Cannon v. Bowen*, 858. F.2d 1541, 1545 (11th Cir. 1988).

In the instant case, the ALJ found that Plaintiff does have an underlying medically determinable impairment that could reasonably be expected to cause some of the alleged symptoms, but discredited Plaintiff's testimony regarding the intensity, persistence, and limiting effects of those symptoms. (Tr. 20). Therefore, the question before the court is whether the ALJ articulated explicit and adequate reasons for discrediting Plaintiff's allegations.

The ALJ explicitly articulated eight reasons for discrediting Plaintiff's subjective pain testimony: (1) all of Plaintiff's treatment had been conservative in nature, with no referrals for

8

surgery or other aggressive measures; (2) the radiologist determined that Plaintiff's X-rays showed only minimal degenerative changes in his lumbar spine; (3) Plaintiff's medical records from MedplexMD and his consultative examinations with Dr. Brower and Dr. Zaremba indicate that Plaintiff's pain is related more to spasm and that there are no neurological abnormalities associated with Plaintiff's spine; (4) Plaintiff did not require use of a cane, except temporarily in conjunction with a sprain of his right Achilles tendon; (5) Plaintiff missed follow-up appointments and failed to fill his prescriptions; (6) Plaintiff obtained no medical treatment for any condition after May 2009; (7) Plaintiff did not require any emergency care or inpatient management for pain control; and (8) Plaintiff did not utilize a pain control device such as a transcutaneous electrical nerve stimulation ("TENS") unit. (R. 21). Taken together, a reasonable person may find these reasons adequate to support the conclusion that Plaintiff's pain is not as severe as he alleges. Therefore, the ALJ's decision to discredit Plaintiff's testimony regarding the severity and persistence of his pain is supported by substantial evidence.

      **B.**     **The ALJ Did Not Arbitrarily Substitute Her Own Judgment for That of the Medical Experts.**

Plaintiff alleges that the ALJ arbitrarily substituted her own judgment for that of Dr. Zaremba, a non-treating physician. (Pl.'s Mem. 10-11). In support of this claim, Plaintiff points to inconsistencies between the ALJ's determination of Plaintiff's RFC and Dr. Zaremba's findings. *Id.* This argument misses the mark. A review of the record reveals that the ALJ did consider Dr. Zaremba's opinion. For example, while determining Plaintiff's RFC, the ALJ observed that Dr. Zaremba did not recommend surgery or other aggressive measures to treat Plaintiff's condition and that Dr. Zaremba found no neurological abnormalities related to Plaintiff's spine. (R. 21). However,

the ALJ did not blindly accept Dr. Zaremba's findings when they conflicted with other evidence in the record, nor was she required to do so. For example, while the ALJ did acknowledge Dr. Zaremba's diagnosis of lumbar radiculopathy, she also noted that this diagnosis conflicted with the report of Plaintiff's treating physicians at UAB, who examined Plaintiff's X-rays and found only minimal degenerative changes to his lumbar spine. (R. 21, 160). Indeed, to the extent that the ALJ's determination departed from Dr. Zaremba's findings, the difference does not reflect an attempt by the ALJ to substitute her opinion for that of a non-treating physician, but rather is the result of the ALJ giving more weight to the opinions of treating physicians over the opinion of Dr. Zaremba, a non-treating physician. An ALJ's decision to give more weight to a treating physician than to a non-treating physician is not only permissible, it is required by the regulations absent a sufficient reason for not doing so. *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d) (explaining that in the evaluation of medical opinions from "acceptable medical sources," treating physicians are given more weight than non-treating physicians). Therefore, the court does not find that the ALJ substituted her judgment for that of a medical expert, but rather followed the instructions set by the regulations to accord more weight to the opinions of treating physicians over non-treating physicians.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that proper legal standards were applied in reaching this determination.

The Commissioner's final decision is, therefore, due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___11th___ day of March, 2013.

                                                     **R. DAVID PROCTOR**
                                                   UNITED STATES DISTRICT JUDGE